ownership, possession and control for the named insured to have had an insurable interest in the Kia Forte. One or more of those factors would have had to be present. In the case at hand, none of those factors were present. The named insured never had ownership of the Kia Forte, and she never had control of the Kia. As a matter of fact, the named insured never actually saw the Kia. She saw pictures of it, but she never actually saw and inspected the vehicle. The District Court therefore erred in holding that an incomplete purchase transaction in and of itself gave Suzuki-Ortiz an insurable interest in the Kia Forte. In the Texas Supreme Court, the District Court found actual ownership. The court found control, but the court did not find possession. As a result, the court ruled that the named insured had an insurable interest, and the court found coverage. In the Texas Supreme Court case of Gulf Insurance Company v. Bobo, the court found actual ownership. However, the court did not find possession or control. So because there was no possession or control, the Supreme Court found that there was no insurable interest in the vehicle, and therefore there was no coverage. In the San Antonio Court of Appeals case of Gulf Insurance Company v. Wynn, the court found no ownership because the vehicle was stolen. So although the named insured had possession of the vehicle, it was stolen, so he didn't have true ownership. However, the court found that the named insured maintained control of the vehicle, and the named insured had possession of the vehicle. So in that case, even though there was no ownership, the court found that the named insured had an insurable interest in the vehicle, and the court found that the named insured paid a premium for coverage of the vehicle. The requirement of the policy and the premium, that's just a gatekeeping factor that lets the parties inside the courthouse to have the named insured, to have the insurable interest issue decided. If there's no insurance policy, then there's no insurance, so there's no insurable interest. But once the court finds that there's a policy in place that provides coverage for the vehicle, the court then evaluates whether there's ownership, possession, or control. In cases where one or more of the three factors are present, the results can vary. Sometimes there's one and not two, and two of them are present, sometimes two of them are present and one of them is not. But in this case, none of the factors were present. Counsel, so let's unpack this a little bit if I could, to make sure I'm understanding this. So she'd signed a contract to buy the vehicle, correct? Correct. She had also, basically I think as part of that, agreed that she was responsible for any and all damage to the vehicle resulting from the use, maintenance, operation of the  That's possible, yes. She put down $500. Yes. She agreed to finance the rest. When she signed the contract, yes. Yeah, so one of the requirements of the contract from the dealer's point of view was she had to go get an insurance policy before the car would be turned over, correct? Correct. Well, then how would she ever have an insurable interest in the car before it was turned over to her? I mean, she's kind of in a catch-22 at that point, right? Or has the insurance policy somehow become valid when the car is delivered? Well, Your Honor, we believe she gets ownership when the car is delivered. When the car is delivered or when she puts down the deposit and signs the documents? Under these facts, we believe one is delivered because she had But then how was she ever going to get an insurance policy that was valid, under your theory? Under my theory, well, once she has ownership of the vehicle and she has possession and control, then she has an insurable interest. But she can't, she doesn't own it under your theory, she doesn't possess it, she doesn't control it, but she has to go get an insurance policy before she can do those things. She has to get an insurance policy in anticipation of the sale. So she's getting an insurance policy that's not valid? That's correct. Where's your case that says that's how this works? Your Honor, we did not find a Texas case that says that that's how it works. We did not locate a case that says. If the Kia was ready that day and she drove it off the lot once she signed these documents, at that point she would have taken ownership and all? I mean, those factors would be met, right? She possessed it, she controlled it, she took ownership. Correct, Your Honor. The only factor here is that it wasn't ready? The only factor here is that it wasn't ready, it hadn't been delivered, and it wasn't even in working order. But they gave her a loaner pending it being serviced and prepared, right? Yes, they did. They did. So if a really bad storm came at the dealership, cars destroyed, hail damage, or a serious windstorm damages the car, you're saying her policy wouldn't have covered that? That's what I'm saying. She never had control. The cases evaluate ownership, control, and possession. She never had possession of the car. So the car is being repaired, but yes, the car is still under the total control of the car dealership. She doesn't get to say who drives it. She doesn't get to say what happens to it. She doesn't get to say how it gets delivered to her. She has no control of the vehicle. She was paying for insurance she didn't have, is basically her position. Yes, that's my position, and it happens. I've seen refunds in cases, ma'am. I thought the Snyder case from the Texas Supreme Court, which you cite multiple times, established that unless it's otherwise required by the policy, that actual ownership isn't necessary to establish an insurable interest. Your Honor, the way I interpreted the Snyder case, the Texas Supreme Court also, in making its holding, the Texas Supreme Court also analyzed ownership and insurance. It evaluated ownership, control, and possession. So while it did say that actual ownership is not required, it also said that, well, hey, if you don't have actual ownership, then possession and control are considered. I don't believe the Texas Supreme Court ever said that. Hey, no ownership without possession or control. I don't believe that the Texas Supreme Court evaluated the ownership issue in a vacuum. So in the case at hand, there was no ownership, no possession, or control. So how did the district court reach its holding? The district court simply looked at a sales contract. The purchase, it is our position that the purchase was incomplete because there was no delivery. There was never any delivery. The court said that the incomplete purchase contract gave Ortiz liability for the kid's use, maintenance, or operation. The problem is that the contract didn't convey ownership. The trial court said that ownership was immaterial. So in this case, the court said that ownership did not matter, but that outside of ownership, the contract gave her liability for use, maintenance, and operation. Either the contract was valid, and she had those liabilities, or the contract wasn't valid, but the court created a conflict. The court said that, hey, ownership's immaterial. There was no ownership, but she's still liable somehow under the contract. I believe that the ownership issue has to be decided because that's one of the factors. The ownership issue has to be decided because there was no possession or control. If there's no ownership, no possession, or control, under the Texas Supreme Court cases and under the Texas cases, there's no insurable interest. If there's no insurable interest, then there's no coverage under the policy. The appellee cited to four cases. The appellee cited to four foreign cases. One was Webb. In the case of Webb, the buyer had already had possession of the built truck. The buyer had possession. Something happened to the truck, and then there was a substitute vehicle. That's distinguishable from our case because the name insured in our case never had possession. In the Nebraska Farm Bureau case, again, the name insured received actual delivery of the Ford Thunderbird. In our case, there was no delivery. In the El Paso case, the Cobos case, out of the Court of Appeals in El Paso, Cobos had ownership, control, and possession over the family auto before the damaged truck was substituted for the family auto. In the Cobos case, there was ownership, control, and possession. Why isn't Homestate appealing? Is that because they're already off the hook with your client because of that state court case with the default judgment? Probably so, Your Honor. I don't know why they're not appealing. Would this policy, if there were coverage, provide more coverage than the Homestate policy? Yes. So that's why your client from the beginning wanted this policy to apply. That's correct. So there was no insurable interest in the kit. Therefore, the Hyundai was not a temporary substitute. Since the Hyundai wasn't a temporary substitute, the Homestate policy did not cover the appellant, and the appellant was therefore entitled to a defense in the case. The appellant therefore asked the court to reverse the trial court's grant of summary judgment and remand the case. Thank you, Mr. Scott. You've saved some time for me. Mr. Bowman? May it please the court opposing counsel, Russell Bowman for the Apple E Century Select Insurance Company. Just to go over, the key issue in this case is whether the judge's ruling that the Elantra vehicle that Mr. Ramirez was driving at the time of the accident is a temporary substitute auto for the Kia Forte that Ms. Ortiz had insured under her Homestate policy. Evidence was undisputed that the Kia Forte was not ready for delivery to Ms. Ortiz on August the 13th, so when it wasn't ready, Clark Knapp gave her a loaner vehicle. That clearly would constitute a temporary substitute auto. One of the cases I had cited in my brief that opposing counsel didn't mention was the Continental Volvo case that I had cited. Same type of factual situation as this case. A husband and wife had bought a car from the Volvo dealership. They went to get it. The car was not ready for delivery. The dealer was still doing some servicing to the vehicle, so the dealer provided the purchasers a loaner vehicle. While they had the loaner vehicle, just like in this case, they got into a wreck. The issue in that case was whether the car buyer's insurance covered the accident or whether it was covered under the dealer's policy. The dealer's policy, just like the sentry policy, made it an excess if the buyer had insurance on their own. The buyer in that case had insurance on their own. The court held the buyer's insurer provided insurance for the accident, not the car dealership. It's the same result that should happen in this case. Also, when opposing counsel mentioned how the sentry policy provided more estate policy would, that was not correct. The sentry policy, like all of these dealer policies, has what's referred to as a step-down clause where, for instance, say someone's going to buy a car. They take it for a test drive, get into a wreck, and they don't have insurance. The dealer's policy will provide insurance to that permissive user, but only for the minimum limits required in the jurisdiction and only to the extent that the buyer's insurance or the user's insurance is not sufficient to meet those limits. In this case, the home estate policy had the minimum limits, so since it applied, the sentry policy would provide no coverage whatsoever. Even if the home estate policy applied, you couldn't be responsible for more than the minimum limits. Because of the step-down provision? Correct, Your Honor. I guess the reason I was asking that question, I'm trying to understand whether Ortiz, what his stake in this case or his standing really is, and I guess because normally why would he care if two insurance policies are going to provide the same coverage? To me, that's a battle between those two insurance carriers, but I guess it's because the home estate policy is not going to provide coverage because of the state court proceeding? Is that why Ortiz has an interest here? I think the big – well, one of the big reasons is I think they're under the assumption that the sentry policy limit is $500,000 and then it's got excess and umbrella coverages that also don't apply. Just one, because Ramirez wouldn't qualify as an insured under either coverage and also the excess doesn't apply if the primary doesn't apply. But the step-down provision is clear. Assuming there was no home estate policy whatsoever, that Ortiz had no insurance, Ramirez had none, to get to a rec, the most the sentry policy would cover Ramirez for would be the minimum limits, which would be 30 per person, 60 per accident, 25 for property damage. And now getting to counsel's various arguments. If that's the case, counsel, how do we have jurisdiction? You have jurisdiction because they're making a claim not only under the primary but also the excess and umbrella coverages and also it's dealing with the duty to Is there evidence that the defense cost would do that? I mean, 60K, say that's the limit, operation of law, would we reach 75,000 based on cost of defense and where's that in the record? I don't know if that's in the record as far as the actual defense cost but just taking the 60 grand per accident limit, that easily would be an amount of that's the minimum amount that the sentry policy could provide. You'll easily spend more than $15,000 defending a multiple plaintiff lawsuit like this, Your Honor. That may be true. I mean, my days as a lawyer, I think you could almost assume it's true but can we assume it's true? There's no allegation, right? Unless there's been no, I know the court can look at subject matter jurisdiction on its own even though it's not raised by any party but But we have to. Yes. At least with this case, I think the court can almost take judicial notice that fees would be in excess of $15,000 to where your minimum amount of controversy is required but even taking that aside, they're claiming coverage also under the excess and umbrella coverages which triggers the $500,000 possible limit that they're saying is owed. That alone right there would satisfy the amount of controversy requirement, Your Honor. In other words, they don't concede that it's 60K for bodily injury per the minimum amounts required by state law, then we're well above. Correct, Your Honor. They don't concede that. If you look in the pleadings, they denied that the minimum limits are all that applies so that alone gives you your amount of controversy requirement. I didn't mean to get you off but I thought I should ask the question before you dove in to other issues. You used to have the train to rail, Your Honor. Getting into counsel's various arguments, one he mentioned about the ownership issue and Judge Smith, Your Honor, you were correct on that. The Texas Supreme Court in Snyder held that ownership is not required and like in that case, what constituted a covered auto was basically the same definition as what we've got in the home state policy. An auto that was covered under that policy was defined using the term owned automobile which was defined as an auto shown in the declaration for which a premium is charged. The home state policy has a similar provision that says a covered auto is one shown in the declarations and the declarations page of the home state policy reflects the premium that's being charged for that particular vehicle, a premium which Ms. Ortiz paid at the time she applied for and obtained the home state policy. Snyder shows that ownership clearly is not required which is kind of common sense since in today's world where a lot of people lease automobiles, if ownership was required, they could never get liability insurance for them because they don't own the car. They're just leasing. Well, ownership may not be required but here there wasn't ownership. There wasn't possession. There wasn't control. There was none of that, right? There wasn't. Well, no, there was possession, Your Honor, because as I cite in the brief, under Texas law, possession connotes the right to exercise dominion and control. That's the Liberty Mutual case which I cite in the brief. Ms. Ortiz clearly had that right. So it's your position she owned the car by the time she left out of there even though it wasn't ready? Yes. Or she had dominion and control? Yes, because both sides, she had signed and the authorized representative of the dealership had signed the binding Texas vehicle installment sales contract. She couldn't have come in and renounced it or said, We have no contract yet. I've changed my mind. Putting aside any sort of buyer's remorse thing under law. Correct, Your Honor. If she had and the dealership chose to, they would be well within their rights to sue her to enforce the contract because at that point both parties had signed it. She had paid the minimum down payment that was required. The rest of the payments were going to be financed and she already had the finance approved. That's part of the sales documents in the record. So at that point there was a binding sales contract which under Texas law gave her the right to exercise dominion and control over the vehicle so that she had possession of it for purposes of Texas law. Further, the home state policy itself doesn't require possession of the vehicle before the policy can go into effect and be effective. Part of that, I've cited Section 348.206 of the Texas Finance Code, and that deals with the buyer can be required to provide proof of insurance to the dealer if the dealer so requires such before the buyer can obtain possession of the vehicle from the car dealer. In this case, Clark Knapp Honda required such proof of insurance from Ms. Ortiz. That's on page 783 of the record. She provided that being the home state declarations page showing the policy was in effect. So again, under that Finance Code provision, you could never come into possession of the vehicle because you'd have to get insurance first. But if you can't get insurance because you don't have possession of the vehicle, it's the catch-22 like you were saying, Your Honor, which is it just doesn't work that way. Once she signed that sales contract and the dealer signed it as well, they had a binding agreement at that point. The car is hers. She's simply awaiting delivery for it. And since it wasn't ready, since the evidence is undisputed, they were still doing work on the car. When they provided her the loaner because her car was unavailable for normal use because of the need for having work done on it, that made that Hyundai Elantra a covered auto under the home state policy. That being a covered auto, Mr. Ramirez would constitute a covered person since the home state policy covers any person using a covered auto. Now, the other thing to address, the insurable interest question, that wind case, the name insured on that car was held to have had an insurable interest in it even though he had stolen it. All you need to have an insurable interest for liability insurance purposes is if you're going to use a car out in public, you get into an accident, you can be liable for damages. That gives you all the insurable interest you need. And the record's undisputed here that Ms. Ortiz had the car been ready, was going to take it to the beach that day, was going to use it to drive to and from work. She was going to be using the vehicle out on public roads and public streets, which would be all she would need to have an insurable interest in the vehicle. So basically, appellant's arguments that there was no ownership, no possession, and no insurable interest are completely wrong and the district court correctly saw that. And then the other thing I wanted to add as far as why home state didn't appeal, I'm not really sure, I wasn't even sure why they filed a motion for summary judgment because at the time they did, they had already gotten a default judgment against Ortiz and Ramirez. So I'm not really sure, I can't say what they were doing, but I did find it interesting that when I filed the declaratory judgment action on Century's behalf, had it served on Ms. Ortiz and Mr. Ramirez, they were able to get lawyers to appear and defend the declaratory judgment action I filed, yet somehow they let a default be entered against them on the home state policy, which is the only thing I can figure is they were thinking the Century policy would provide more money and they could show that, or at least argue, hey, we don't have insurance on it, so pay us. Of course, I had cited cases to the district court showing that if the other policy is available but you don't take advantage of it, you know, it's like you had insurance. So if that was their plan, it didn't work. So long story short, the district judge's ruling is correct, correctly follows Texas law and should be affirmed. Thank you, Mr. Bellman. Mr. Scott, you have some time for rebuttal. You know, in the Continental Volvo case, that's a case from the state of Washington, and apparently the state of Washington does not analyze those cases like the state of Texas does. In the Volvo case, we don't know if that buyer had ever seen that car before. We don't know if that buyer, if the title had been transferred. There's just a lot of factors we don't know that have to do with ownership. In Texas, ownership is not evaluated in a vacuum. It's not just, hey, was there ownership, and that solves the whole question. You know, that solves the whole problem. The Winn Court, opposing counsel Richard Winn, the Winn Court found no ownership, but it analyzed whether there was control and possession. So all we want the court to do is this. Don't just look at ownership. Look at control and possession. What of counsel Opposite's argument that effectively control and or possession doesn't have to be physical custody? I mean, that may be an oversimplification of what counsel is arguing, but, I mean, what about the fact that she had some interest in the car by the time she executed these agreements? That's true, and that's a great issue. In Snotter, the named insurer did not have physical control, physical possession, or physical control. So it was those circumstances exactly. However, the court still found that he had an insurable interest because, although he didn't have physical possession, he had authority to decide who used the car or not. He told his daughter he had authority. So without physical possession or physical control, he had authority. What I'm saying in the present case is Ortiz had never seen the car before. She didn't know where it was. We don't really know if the car even exists. I mean, there's no evidence that—I don't know if anyone has ever seen the car. She saw pictures of it. Could she have come into the dealership, say the dealership said, we're not giving you the car? Could she have sued the dealer at that point for specific performance? I want my car. Oh, she definitely could have sued. I don't know how the case would have gone, but she could have sued. I would have sued her by the same token if she decided I don't want the car. So she calls the dealer and says forget about it. I want my $500 back. Could she have done that? That would be determined by the Texas Finance Code. If she hadn't received a copy of the contract when she signed it, she has a certain period of time until the contract— Set aside like a buyer's remorse kind of thing. I mean, you have five days to bring it back and say I don't want it. Set that aside. Well, I'll tell you this. The sales contract assumes—there's language in the sales contract that says that you have inspected the vehicle. You see the condition of the vehicle, and you're accepting it. That had never happened. So if we want to go down that route, that's in the sales contract, and that has to happen before she could assume ownership of the car. That had never happened. So I would think she would have grounds to say, no, I signed the contract, but I had never seen the car. So no, and the contract says I have to see the car, and I have to inspect it because it was not in working condition. So that's another thing. It wasn't in working condition, so it wasn't even ready for her to take ownership of it. It wasn't working. So there's a lot of things that go with this case where the ownership issue is there was no ownership, or there's a fact question as to whether there was ownership. And in the Texas Supreme Court's analysis, ownership, possession, and control, I don't know how Nebraska and Washington does it, but the Texas Supreme Court in these cases analyzed ownership, control, and possession, and I ask this court to analyze it in the same way. That's all I have. Thank you, Mr. Scott. Thank you. The case is under submission. Last case for today.